FILED
AUG 12 2026
MAGISTRATE JUDGE LAURA K. MCNALLY
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHARON CHRISTINE SACKMAN | No. 25 CR 778<br><br>Hon. Laura K. McNally |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ANDREW S. BOUTROS, and defendant SHARON CHRISTINE SACKMAN, and her attorney, PATRICK W. BLEGEN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in this Case

2. The information in this case charges defendant with causing the introduction into interstate commerce of misbranded drugs, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(1) (Count One), and selling and dispensing counterfeit drugs, in violation of Title 21, United States Code, Sections 331(i)(3) and 333(a)(1) (Counts Two through Four).

3. Defendant has read the charges against her contained in the information, and those charges have been fully explained to her by her attorney.

4. Defendant fully understands the nature and elements of the crimes with which she has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the information: Count Three, which charges defendant with selling and dispensing counterfeit drugs, in violation of Title 21, United States Code, Sections 331(i)(3) and 333(a)(1).

## Factual Basis

6. Defendant will plead guilty because she is in fact guilty of the charge contained in Count Three of the information. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

Since at least approximately 1998, defendant was a registered professional nurse (RN) in Illinois. Defendant was not licensed by law to prescribe, administer, dispense, or sell Ozempic.

In or about 2023, defendant contacted multiple overseas pharmaceutical suppliers about the availability and pricing of Ozempic products.

Defendant acknowledges that the government can prove that, at all relevant times, including from in or about October 2023 through on or about December 2, 2023:

a. The U.S. Food and Drug Administration ("FDA") regulated, among other things, the manufacture, labeling, and distribution of drugs in the United States, including prescription drugs, according to the provisions of the Federal Food, Drug, and Cosmetic Act, Title 21, United States Code, Section 301 *et seq.*

("FDCA"). The FDCA defined a "drug," in part, as any article intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans and any article (other than food) intended to affect the structure or any function of the human body. Under the FDCA, a prescription drug was one that, because of its toxicity, other potential harmful effects, the methods of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer the prescription drug.

b. The FDCA defined a "counterfeit drug," in part, as a drug which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, or any likeness thereof, of a drug manufacturer, and which thereby falsely purports or is represented to be the product of that drug manufacturer.

c. Ozempic, manufactured by Novo Nordisk, was an FDA-approved prescription drug containing the active ingredient semaglutide that was approved to lower blood sugar levels in adults with type 2 diabetes mellitus, in addition to diet and exercise. Ozempic was also approved to reduce the risk of heart attack, stroke, or death in adults with type 2 diabetes mellitus and known heart disease.

As charged in Count Three of the information, on or about December 2, 2023, at Chicago, in the Northern District of Illinois, Eastern Division, defendant SHARON CHRISTINE SACKMAN sold and dispensed counterfeit drugs, namely, products labeled as "Ozempic®," but not manufactured by Novo Nordisk, to Victim 2, in

violation of Title 21, United States Code, Sections 331(i)(3) and 333(a)(1). As relevant conduct, defendant acknowledges that she simultaneously sold similarly mislabeled products to Victim 3 (Count Four).

More specifically, on December 2, 2023, Victims 2 and 3 together purchased from defendant six boxes of purported Ozempic, each box containing a single, multi-use injection pen with four weekly doses, for a total price of $2,800. Of that $2,800 total, Victim 2 paid defendant $800 and Victim 3 paid defendant $2,000. Victims 2 and 3 did not present defendant with a prescription for Ozempic.

Defendant acknowledges that the government can establish the following:

a. The injection pens that defendant sold to Victims 2 and 3 were supplied to her by a foreign merchant in Southeast Asia, which was not registered with the FDA.

b. The pens were counterfeit because they were not Ozempic, were not manufactured by Novo Nordisk, and did not contain semaglutide.

c. From December 28-31, 2023, Victims 2 and 3 were hospitalized as a result of adverse reactions to the counterfeit products sold to them by defendant.

d. Victim 2 incurred $3,513 in out-of-pocket medical costs in connection with his hospitalization, and Victim 2's health insurer (Medicaid) reimbursed the hospital (Hospital 1) for an additional $840 in hospitalization costs.

e. Victim 3 incurred $4,947 in out-of-pocket medical costs in connection with her hospitalization, and Victim 3's health insurer (Health Insurance Company A) reimbursed Hospital 1 for an additional $25,563 in hospitalization costs.

7. Defendant acknowledges that for the purpose of computing her sentence under the Sentencing Guidelines, the following conduct, to which she stipulates, constitutes additional relevant conduct under Sentencing Guideline § 1B1.3:

As charged in Count Two of the information, on or about October 23, 2023, at Chicago, in the Northern District of Illinois, Eastern Division, defendant SHARON CHRISTINE SACKMAN sold and dispensed counterfeit drugs, namely, products labeled as "Ozempic®," but not manufactured by Novo Nordisk, to Victim 1, in violation of Title 21, United States Code, Sections 331(i)(3) and 333(a)(1).

More specifically, on October 23, 2023, Victim 1 purchased from defendant multiple injection pens labeled as "Ozempic," paying defendant $2,400 for the pens. Victim 1 did not present defendant with a prescription for Ozempic.

Defendant acknowledges that the government can establish the following:

a. The injection pens that defendant sold to Victim 1 were counterfeit because the pens were not actually Ozempic, were not manufactured by Novo Nordisk, and did not contain semaglutide.

b. From December 24-27, 2023, Victim 1 was hospitalized as a result of adverse reactions to the counterfeit products sold to her by defendant.

c. Victim 1 incurred $3,846 in out-of-pocket medical costs in connection with her hospitalization, and Victim 1's health insurer (Health Insurance Company A) reimbursed Hospital 1 for an additional $39,314 in hospitalization costs.

**Maximum Statutory Penalties**

8. Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

a. A maximum term of imprisonment of one year; a maximum fine of $100,000; and a maximum term of supervised release of one year.

b. The Court also may order restitution to any victim as a condition of supervised release, or otherwise to any victim as agreed by the parties pursuant to this Agreement.

c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $25 on the charge to which she has pleaded guilty, in addition to any other penalty or restitution imposed by the Court.

**Sentencing Guidelines Calculations**

9. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote

respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of defendant, and provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10. For purposes of calculating the Sentencing Guidelines, the government's position as of the date of this Agreement is as follows:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the November 1, 2025 Guidelines Manual.

b. **Offense Level Calculations.**

***Government's Position***

i. Because the offense in Count Three and relevant conduct (Counts Two and Four) involved fraud, the applicable Guideline is Guideline § 2B1.1, pursuant to Guideline § 2N2.1(c)(1).

ii. The offenses charged in Counts Two, Three, and Four are grouped together pursuant to Guideline § 3D1.2(d).

iii. Pursuant to Guideline § 3D1.3(b), the offense level applicable to the group is the offense level corresponding to the aggregated quantity (*i.e.*, the total loss), determined in accordance with Chapter Two and Parts A, B and C of Chapter Three.

iv. The base offense level applicable to the group is 6, pursuant to Guideline § 2B1.1(a)(2).

v. Pursuant to Guideline § 2B1.1(b)(1)(D), the offense level is increased by 6 levels because the total loss incurred by the victims and their health insurers (at least $83,223) is more than $40,000, but not more than $95,000.

vi. Pursuant to Guideline § 2B1.1(b)(16)(A), the offense level is increased by 2 levels because the offense and relevant conduct involved the conscious or reckless risk of death or serious bodily injury.

vii. Pursuant to Guideline § 3B1.3, the offense level is increased by 2 levels because defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission of the offense and relevant conduct.

***Defendant's Position***

viii. The defense position is that the "fraud" cross-reference pursuant to Guideline § 2N2.1(c)(1) is not applicable. The defense reserves the right to present its guideline calculations to the Probation Office and the Court.

*Acceptance of Responsibility*

ix. The government understands that defendant will truthfully admit the conduct comprising the offense of conviction and truthfully admit, or not falsely deny, any additional relevant conduct for which defendant is accountable under Guideline § 1B1.3. Therefore, based upon facts now known to the government, defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

x. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category.** Based on the facts now known to the government, defendant's criminal history points equal zero and her criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range.** Based on the facts now known to the government, the anticipated offense level total, as calculated by the government, is 13, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 12-18 months of imprisonment, in addition to any term of supervised release, fine, and restitution the Court may impose. However, because the statutorily authorized maximum sentence is 1 year of imprisonment, the statutorily authorized maximum sentence of 1 year shall be the Guideline sentence, pursuant to Guideline § 5G1.1(c)(1). The defense reserves the right to present its guideline calculations to the Probation Office and the Court.

11. Defendant and her attorney and the government acknowledge that the Sentencing Guidelines calculations set forth in this Agreement are preliminary in nature and are non-binding predictions upon which neither party is entitled to rely. Defendant understands the above Guidelines calculations are based on information now known to the government and that further review of the facts or applicable legal principles may lead the government to change its position on the Guidelines calculations. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to

sentencing, and that the Court's determinations govern the final Guidelines calculations. Accordingly, the validity of this Agreement is not contingent upon defendant's, the Probation Officer's, or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of a change in the government's position on the Guidelines calculations or the Court's rejection of these calculations.

12. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by the government prior to sentencing. The government may correct these errors by a statement to the Probation Office or the Court, setting forth any changes in the government's position regarding the Guidelines calculations. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea on the basis of such corrections.

## Agreements Relating to Sentencing

13. Each party is free to recommend whatever sentence it deems appropriate.

14. It is understood by the parties that the Court is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept

the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

15. Pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664, defendant agrees to pay restitution arising from the offense and relevant conduct, in the total amount of $83,223—of which $6,246 is payable to Victim 1; $4,313 is payable to Victim 2; $6,947 is payable to Victim 3; $64,877 is payable to Health Insurance Company A; and $840 is payable to Medicaid—minus any credit for funds repaid prior to sentencing,.

16. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), she is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect her ability to pay restitution.

17. Defendant agrees to pay the special assessment of $25 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), and Title 31, United States Code, Sections 3711, 3716, and 3728, notwithstanding any payment schedule set by the Court. In the event of the death or dissolution of, or the government's inability to locate the named

recipient(s) of restitution in the Judgment and Commitment Order, defendant agrees to not oppose efforts by the government to obtain an order substituting as payee a representative of the victim's estate, another family member, or any other person or successor entity appointed as suitable by the court, or the Crime Victims Fund.

19. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein (Count Three), the government will move to dismiss the remaining counts of the information (Counts One, Two, and Four).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 25 CR 778.

21. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

22. Defendant understands that, by pleading guilty, she surrenders certain rights, including the following:

a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the information separately.

The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence on her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

b. **Appellate rights.** Defendant further understands that she is waiving all appellate issues that might have been available if she had exercised her right to trial and may only appeal the validity of this plea of guilty and the sentence

imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

23. Defendant understands that, by pleading guilty, she is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

24. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Presentence Investigation Report and at sentencing shall endeavor to ensure that the relevant facts and sentencing factors, as applied to the facts, are brought to the Court's attention fully and accurately, including facts related to defendant's criminal conduct and related conduct, and any relevant information concerning defendant's background, character, and conduct that the Court may consider under 18 U.S.C. § 3661 in imposing a sentence.

25. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the Probation Office. Defendant understands that providing false or incomplete information, or refusing to provide her financial

information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and for enhancement of her sentence for obstruction of justice pursuant to Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of court.

26. For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which she is sentenced, she further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of her individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to her sentencing, to and including the final year of any period of supervised release or probation to which she is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of her request to the IRS to disclose her tax returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

27. Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine and restitution for which she is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

29. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30. Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31. Should the Court refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound by it.

32. Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

33. Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 8/12/26

/s/ Patrick Mott
PATRICK MOTT
For the United States Attorney

SHARON CHRISTINE SACKMAN
Defendant

BRIAN HAVEY
Assistant United States Attorney

PATRICK W. BLEGEN
Attorney for Defendant